IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(KANSAS CITY DOCKET)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.   15-20052-CM-TJJ** |
| | ) | |
| **NAGY SHEHATA and** | ) | |
| **LAURA LEE SORSBY** | ) | |
| **a/k/a LAURA LEE SORSBY** | ) | |
| **DORENBACH,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

At all times relevant to the charges in this Superseding Indictment:

### INTRODUCTION

1.     Defendant Nagy Shehata, was a resident of Kansas.   Defendant Shehata conducted business through Premier Investment Group, Inc., a Missouri Corporation.   Defendant Shehata was the President and Kansas registered agent for the corporation.

2.     Defendant Laura Lee Sorsby, also known as Laura Lee Sorsby Dorenbach, was a resident of Texas.   Defendant Sorsby was identified in various positions, including President, Senior Partner, Chairman, and Executive Director of Can Am International, LLC., which was headquartered in Dallas,

1

Texas.

3.    The victim, whose identity is known to the Grand Jury (hereinafter "Victim"), was a resident of Turkey.

## THE SCHEME TO DEFRAUD

4.    On or about December 22, 2009, Defendant Shehata, through Premier Investment Group, entered into a joint venture agreement with Defendant Sorsby.   Under the terms of the agreement, Defendant Shehata agreed to invest One Billion Euros for a "Special Purpose Vehicle Company" to be formed and operated by defendants Shehata and Sorsby. The defendants agreed to share equally the profits of the joint venture, which was intended to offer a "private placement investment opportunity" to others.

5.    Victim was approached by the defendants, or others acting on their behalf, about an investment opportunity.   Victim was offered an investment into a project that consisted of building a shopping mall in Turkey, which was later changed to a hospital in Syria.

6.    The defendants, or others on their behalf, provided Victim with documents that falsely claimed ABN AMRO, a financial institution, was holding One Billion Euros that would be used as collateral for the project.   The documents were on ABN AMRO letterhead and bore signatures that purported to be from an ABN AMRO employee.   However, the documents were fraudulent and ABN AMRO was not holding money for the project.

7.    On or about September 27, 2010, Defendant Sorsby sent an

"investment commitment letter" on Can Am letterhead to Victim, regarding the building of the hospital.   In the letter, Defendant Sorsby said Can Am would donate $6 million for a cancer center as part of the hospital.

8.    Based upon the false statements made by the defendants and others, Victim agreed to provide money to invest in the project.   On or about October 26, 2010, Victim transferred four million Euros (valued at approximately $5,547,200 USD at the time) to Defendant Shehata's company, Premier Investment Group.   On or about November 10, 2010, Victim wire transferred 2 million Euros (valued at approximately $2,661,400 USD at the time) to the trust account of an attorney for Defendant Sorsby.

9.    Instead of using the money for the hospital project, the defendants used it for personal items and sent part of the money to other conspirators. For instance, Defendant Shehata used the money to buy a new car for approximately $111,444 and approximately $855,388.27 for a new house.   Defendant Sorsby spent approximately $77,247.68 to purchase a 2010 BMW automobile, approximately $59,552.04 to purchase a 2011 Chevy Tahoe automobile, and approximately $163,498.75 to purchase a house in Texarkana, Texas, in addition to other personal expenses.

10.    Defendants Shehata and Sorsby were both informed the ABN AMRO documents were fake.   On or about November 19, 2010, Defendant Sorsby received several emails from another person who told her the documents were fake.   Defendant Sorsby forwarded those emails to Defendant Shehata.

3

Similarly, Defendant Sorsby sent Defendant Shehata an email on or about November 23, 2010, in which Defendant Sorsby advised that another party claimed the documents appeared to be fraudulent.   Defendant Sorsby expressed concerns about this being a huge financial scam.

11.   Defendant Sorsby promised to return Victim his money, but never followed through.   On or about December 7, 2010 and January 8, 2011, Defendant Sorsby sent Victim emails promising to make payments.   However, Defendant Sorsby never returned Victim his money.

12.   In May 2011, Defendant Shehata promised to return Victim his money by wiring the money to a third party who would reimburse the defendant. On May 2, 2011, Defendant Shehata sent Victim an email stating the transfer would occur that day or the next.   However, despite Defendant Shehata's promise, he never returned any money to Victim.

**Count ONE**
**WIRE FRAUD CONSPIRACY**
**18 U.S.C. §1349**

13.   Paragraphs 1 through 12 are incorporated and realleged herein.

14.   During the period from on or about December 2, 2009, and extending until in or around April 2014, the exact dates being approximate and unknown, in the District of Kansas and elsewhere, the defendants,

**NAGY SHEHATA and**
**LAURA LEE SORSBY a/k/a LAURA LEE SORSBY DORENBACH,**

knowingly and willfully conspired and agreed with each other and with other persons known and unknown to the Grand Jury to commit and conceal offenses

4

against the United States by voluntarily and intentionally devising and executing and attempting to execute by interstate wire a scheme to defraud and obtain money and other property by means of false and fraudulent pretenses, representations, and omissions of material fact, in violation of Title 18, United States Code, Sections 1343 and 2.

### OBJECT OF THE CONSPIRACY AND MANNER AND MEANS

15.   The object of the conspiracy and scheme to defraud was to enrich the conspirators by obtaining money from Victim through false and fraudulent pretenses, representations, and omissions of material fact.

16.   It was part of the conspiracy, and in furtherance of it, that the conspirators promised Victim they would use his money for projects the Victim intended to finance, such as the construction of a hospital in Syria and a shopping mall in Turkey.

17.   The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

a.   The defendants, or others acting on their behalf, solicited Victim to invest money in a construction project.

b.   On or about October 23, 2010, Defendant Sorsby sent an email to Defendant Shehata in Kansas, stating "George I need your new account number outside the USA thanks Laura (*sic*)" for the purpose of directing Victim to send a wire transfer to defendant Shehata.

c.   On or about October 26, 2010, Victim sent approximately

$5,547,200 via wire transfer from Victim's bank in Switzerland to Defendant Shehata's Morgan Stanley account in New York.

d.      On or about October 26, 2010, Defendant Shehata sent an email from Kansas to an individual at Morgan Stanley requesting a letter so that Defendant Shehata could transfer two million Euro from his Morgan Stanley account to his Citizen Bank account in Kansas.

e.      On or about October 26, 2010, Defendant Shehata sent an email to a coconspirator advising that he had received the money and would wire $1,602,035 to First Caribbean Bank.   In response, the coconspirator sent a series of emails directing the defendant to send wire transfers to various accounts.

f.      On or about November 10, 2010, Victim wired approximately $2,661,400 to a trust account held by an attorney for Defendant Sorsby. Instead of using the money for projects as promised, Defendant Sorsby used the money for personal expenses.

g.      On or about January 8, 2011, Defendant Sorsby sent victim an email.   In the email, Defendant Sorsby said, "Once we get this closed which can take up to 15 banking days...we will pay all your returns at once.   We are also going to pay an extra % to you for being late and refund the down payment to your son for the money he lost."   Despite the email, Defendant Sorsby never gave Victim any money.

h.      On or about July 22, 2011, Defendant Sorsby conducted a monetary

transaction, that is, the payment of $77,247.68 via cashier's check for the purchase of a 2010 BMW automobile.

i.      On or about August 16, 2011, Defendant Sorsby purchased a 2011 Chevrolet Tahoe using Victim's money.

j.      On or about September 29, 2011, Defendant Sorsby conducted a monetary transaction, that is, the payment via check of $163,498.75 for the purchase of a house in Texarkana, Texas.

k.      On or about November 16, 2011, Defendant Sorsby purchased a 2006 Skyline travel trailer using money sent by Victim.

l.      Between December 18, 2012 and January 7, 2013, Defendant Sorsby paid $8,000 college tuition for a relative and provided the same relative a loan in the amount of $9,600, using Victim's money.

m.     On or about September 23, 2013, defendant Sorsby obtained a certificate of deposit in the amount of $185,000, using Victim's money.   She then obtains a loan in the same amount.   On or about October 2, 2013, Defendant Sorsby purchases a residence in Salado, Texas, using proceeds of the loan.

n.      The defendants sent Victim lulling emails, falsely telling the defendant that he would receive his money back.

o.      Counts two through eight are incorporated as additional manner and means used to accomplish the objectives of the conspiracy.

18.   This was all in violation of Title 18, United States Code, Section 1349.

7

**Counts TWO through FIVE**
**WIRE FRAUD**
**18 U.S.C. §1343**

19.    Paragraphs 1 through 18 are incorporated and realleged herein.

20.    Beginning in or around December 2, 2009, and extending until in or around April 2014, the exact dates being unknown and approximate, in the District of Kansas and elsewhere, the defendants,

**NAGY SHEHATA and**
**LAURA LEE SORSBY a/k/a LAURA LEE SORSBY DORENBACH**

devised a scheme to defraud and obtain money by means of false and fraudulent pretenses, promises, and representations, caused to be transmitted by means of wire in interstate and foreign commerce, writings, signs, signals, and pictures, for the purpose of executing such scheme, as set forth below.

| Count No. | Defendant | Date | Description of Wire |
|---|---|---|---|
| 2 | Shehata | 10/26/2010 | Fax transmission sent by Defendant Shehata from Kansas to Morgan Stanley in New York requesting transfer of $2,734,000 from Premier Investment Group's Morgan Stanley account to Citizens Bank account ending in 6624, held in name of defendant |
| 3 | Sorsby | 1/12/2011 | Email from Defendant Sorsby in Texas to Defendant Shehata in Kansas sending bank account information |
| 4 | Shehata and Sorsby | 1/13/2011 | Wire transfer from defendant Shehata's bank account at Citizens Bank ending in 6624 in Kansas to defendant Sorsby's bank account at Wells Fargo ending in 9170 in Texas in the amount of $10,000 |

| 5 | Shehata and Sorsby | 4/13/2011 | Email from Defendant Shehata in Kansas to Defendant Sorsby in Texas, which included as an attachment a letter from Citizens Bank |

21.    Each was in violation of Title 18, United States Code, Sections 1343 and 2.

### Counts SIX through EIGHT
### MONEY LAUNDERING
### 18 U.S.C. §1957

22.    Paragraphs 1 through 21 are incorporated and realleged herein.

23.    On or about the dates listed below, in the District of Kansas, the defendant,

**NAGY SHEHATA,**

knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code Section 1343, as set forth below.

| Count No. | Defendant | On or about Date | Monetary Transaction |
|---|---|---|---|
| 6 | Shehata | October 27, 2010 | The transfer of $2,734,000 from Premier Investment Group's account at Morgan Stanley to the defendant's personal account ending in 6624 at Citizens Bank |
| 7 | Shehata | November 10, 2010 | The transfer of $1,000,000 from Premier Investment Group's |

| | | | account at Morgan Stanley to the defendant's personal account ending in 1865 at Bank of Kansas |
|---|---|---|---|
| 8 | Shehata | November 10, 2010 | The transfer of $500,000 from the defendant's personal account ending in 1865 at Bank of Kansas to the defendant's personal account ending in 7944 at Bank of Kansas |

24.     Each was in violation of Title 18, United States Code, Section 1957.

## FORFEITURE NOTICE & ALLEGATION

25.     Paragraphs 1 through 24, and the allegations of the foregoing counts of this Superseding Indictment, are realleged, and by this reference fully incorporated herein, for the purpose of alleging forfeitures to the United States of America, pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(c) and 982(a)(2), and Title 28, United States Code, Section 2461.

26.     As a result of the scheme alleged in the foregoing counts, involving the offenses of conspiracy to commit wire fraud in violation of Title 18, United States Code Section 1349, wire fraud in violation of Title 18, United States Code, Section 1343, and money laundering in violation of Title 18, United States Code, Section 1957, the defendants,

**NAGY SHEHATA and**
**LAURA LEE SORSBY a/k/a LAURA LEE SORSBY DORENBACH,**

shall forfeit to the United States all property, real and personal, involved in and derived from the aforesaid offenses and all property traceable to such property, or proceeds, including, but not limited to:

10

A)    A monetary judgment in the approximate amount of approximately $8,208,600, which sum represents the total amount of gross proceeds obtained as a result of the offenses.

B)    In the event any of the foregoing property: i) cannot be located upon the exercise of due diligence; ii) is transferred, sold to, or deposited with, a third party; iii) is placed beyond the jurisdiction of the Court; iv) is substantially diminished in value; or, v) is commingled with other property which cannot be divided without difficulty, as a result of any act or omission of any defendant, the Court shall order the forfeiture of any other property of the defendants, up to the value of the property described in the foregoing paragraphs.

A TRUE BILL.

Dated:   December 17, 2015          /s/ *Foreperson*
                                    FOREPERSON OF THE GRAND JURY


D. Christopher Oakley #19248 for
BARRY R. GRISSOM
United States Attorney
District of Kansas
500 State Ave., Suite 360
Kansas City, KS 66101
(913) 551-6730
(913) 551-6541 (fax)
barry.grissom@usdoj.gov
Ks. S. Ct. No. 10866


(It is requested that trial of the above captioned case be held in Kansas City, Kansas.)

11

**PENALTIES:**

Ct. 1:      18 U.S.C. § 1349, WIRE FRAUD CONSPIRACY

- 20 Years Imprisonment,
- $250,000 Fine,
- 3 Years Supervised Release
- $100 Special Assessment, and
- Forfeiture Allegation

Ct. 2-5:    18 U.S.C. § 1343 & 2, WIRE FRAUD

- 20 Years Imprisonment,
- $250,000 Fine,
- 3 Years Supervised Release
- $100 Special Assessment, and
- Forfeiture Allegation

Ct. 6-8:    18 U.S.C. § 1957, MONEY LAUNDERING

- 10 Years Imprisonment,
- $250,000 Fine,
- 3 Years Supervised Release
- $100 Special Assessment, and
- Forfeiture Allegation