# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | |
| LAURA LEE SORSBY ) | Case No. 15-20052-01,02 |
| and ) | |
| NAGY SHEHATA, ) | |
| Defendants. ) | |

## DEFENDANTS LAURA LEE SORSBY AND NAGY SHEHATA'S JOINT MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(B)

**COMES NOW** Defendants Laura Lee Sorsby ("Sorsby") and Nagy Shehata ("Shehata"), collectively, the "Defendants", and hereby move to dismiss the indictment brought against them by the United States pursuant to Federal Rule of Criminal Procedure 12(b) , for the following reasons and on the following legal authority.

## INTRODUCTION

The United States's Superseding Indictment ("Indictment") alleges the applicability of 18 U.S.C. § 1343 to the actions and conduct of the Defendants. The conduct recited in the Indictment involved an alleged fraud of a Turkish citizen through the use of a domestic wire. The Defendants contend the statute, 18 U.S.C. § 1343, cannot support the their prosecution because the relevant conduct underlying the charges against took place extraterritorially. The Indictment also violates the Defendants constitutional due process rights by failing to allege conduct with a sufficient nexus between their alleged fraudulent conduct and the United States.
Finally, the Indictment fails, on its face, to allege conduct that gives rise to a criminal offense under United States law. For the foregoing reasons, the Defendants move this Court to dismiss the Indictment against them.

## BACKGROUND

The Indictment alleges that Sorsby and Shehata conspired to and, in fact, committed wire fraud in violation of 18 U.S.C. §§ 1349 and 1343. (Count One and Counts Two, Four and Five). Sorsby is a citizen and resident of United States as is Shehata.[1] The alleged victim of the alleged wire fraud is a Turkish citizen who resided, to the best knowledge and belief of the Defendants, in Istanbul, Turkey during the entirety of the events the United States claim represent a violation of 18 U.S.C. § 1343. This person will be referred to herein as the Alleged Victim.

The gravamen of the Indictment is that Sorsby and Shehata, with intent to defraud the Alleged Victim, solicited him, through personal contacts and the use of domestic wires to invest in a venture expected to cost €1,000,000,000. The venture was described as an offer to participate in "private placement investment opportunit[ies]." The Alleged Victim was told that the investment program would ultimately finance construction projects in Turkey or in Syria

The Alleged Victim was to invest approximately €6,000,000 in the investment program which, in turn would collateralize a construction loan to the venture from a bank in Belgium. The collateral for that loan was to be in the from of a so-called "SWIFT" issued by a bank in the Netherlands known as ABN-AMRO. Once the larger financing package was obtained (supported by the SWIFT), the Alleged Victim was to have his "investment returned" with an attendant very high rate of return. In short, the Alleged Victim was told that he would be making a short term cash outlay that would more than double in just a few weeks.

The Alleged Victim was ultimately provided documents purporting to showing that ABN AMRO, held €1,000,000,000 in a "custodial account" that account to serve as collateral for the

---

[1] Shehata is also charged with three counts of money laundering pursuant to 18 U.S.C. § 1957 (Counts 6-8).

2

financing program for the Turkish (or Syrian) construction projects. During a two-week period in late 2010, the investor wired €4,000,000 to Shehata's company and additional €2,000,000 to the trust account of an attorney representing Sorsby.

The Indictment claims that the representations of Sorsby about the purpose for the transfer of the Alleged Victim's funds to Shehata (and subsequently to her) were known to her to be false when the representations were made and constituted an act of criminal false pretense. While the Indictment is not terribly explicit, it seems to claim that Sorsby knew, when she first discussed the financing program with the Alleged Victim, Sorsby and Shehata both knew that the SWIFT was a "fake" and there was never any intention by Sorsby (or Shehata) to arrange the larger financing package, collateralized by the SWIFT, and to return the Alleged Victim's money with a handsome profit.

The Defendants contend that all counts of the Indictment against them must be dismissed because, as stated above, the criminal statute they are charged with violating, 18 U.S.C. § 1343, cannot factually support a conviction because the Indictment alleges that all of the relevant conduct (the alleged false statements inducing the transfer of money by the Alleged Victim) was engaged in extraterritorially. See, Doc. 18.

The Defendants also contend the Indictment violates their constitutional due process rights because it fails to allege that either of them engaged in any criminally fraudulent conduct, with a sufficient nexus between that conduct and the United States, warranting a domestic (United States) prosecution under United States law. Additionally, the Indictment fails to allege conduct that gives rise to a criminal offense under 18 U.S.C. § 1343 even if that law were capable of enforcement for extraterritorial acts.

The Defendants further claim that if the statute they are charged with committing, wire fraud, were applied extraterritorially, their prosecution would violate the Due Process Clause because the Indictment fails to allege any fraudulent conduct of either defendant, through the use of a wire, having a sufficient nexus to the United States to support a prosecution under 18 U.S.C. § 1343. Indeed, the only nexus between Sorsby's alleged scheme to defraud (in concert with Shehata), as alleged in the Indictment, was the use of an e-mail account requesting that Shehata direct the Alleged Victim to transfer funds directed to the custody of Sheata in the United States. The assertions of Sorsby's conduct (representations about the SWIFT and the Alleged Victim's expected "return on investment" based upon the existence of the ABN-AMRO SWIFT) constituting to scheme to perpetuate a fraud upon the Alleged Victim, whether criminal or not, appears to have taken place, without the use of a wire by Sorsby outside of the United States.

Finally, the Indictment should be dismissed because it fails to allege conduct that gives rise to any criminal offense wherever the conduct was engaged in. Under 18 U.S.C. § 1343, the Government is required to prove that a defendant used a wire to make "material" fraudulent representations and that such representations that had "a natural tendency to influence, or [were] capable of influencing" the decisions of the Alleged Victim. See, *United States v. Gaudin*, 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988)); *Neder v. United States*, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Nowhere does the Indictment allege that Sorsby used a wire with the specific intent to defraud the Alleged Victim of anything. See, *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). The same can be said of Defendant Shehata.

In order to prove either Sorsby or Shehata engaged in a "scheme to defraud" the Alleged Victim through the use of a wire, the Indictment must do more than allege that some of the representations that made to the Alleged Victim were either untrue or could not be accomplished as and when promised (i.e., that collateral to fund the Syrian and Turkish construction projects existed in the form of a so-called ABN-AMRO "SWIFT" actually existed or that it could be provided when originally promised). Indeed, the Indictment itself asserts that Sorsby herself was only informed in November of 2010, long after Sorsby approached the Alleged Victim in Turkey about the obtaining financing for him to support the Syrian and Turkish construction projects he sought to undertake, that the documents evidencing the collateral (the ABN-AMRO SWIFT documents) were fake.

For a crime to have been committed by Sorsby (or Shehata), the Indictment must have alleged and the Government must be able to prove that Sorsby knowingly employed a "material falsehoods" and used a wire to induce acts or conduct of the Alleged Victim. See, *Neder*, 527 U.S. at 20, 119 S.Ct. 1827. Here the claim is that Sorsby became aware of a false representation about a material fact (the existence of the ABN-AMRO SWIFT) *after* the Alleged Victim sent money to Shehata. A statement, if made without knowledge of its falsity when made, cannot is not fraudulent. The Indictment itself fails to assert the existence of this essential element of § 1343 wire fraud because it does not assert that Sorsby (or Shehata) knew, at the time the investment proposition was made to the Alleged Victim or that when the The Alleged Victim's funds were transferred to Shehata, that these documents, apparently evidencing the existence of the SWIFT collateral, were false. See, Doc. 18, ¶ 17(a)-(f).

### **STATEMENT OF FACTS**

Sorsby and Shehata are both citizens and residents of the United States. Sorsby, for many years prior to the events described in the Indictment, was involved in obtaining and placing financing for international projects, many of which were in foreign countries. The Alleged Victim in the circumstances described in the Indictment apparently was (and remains) a citizen and resident of the Turkey.

Sorsby first made contact with the Alleged Victim in early 2010 in a personal meeting in Istanbul, Turkey. All subsequent meetings between the Alleged Victim concerning what Sorsby contends was a legitimate (though complex) investment deal that simply went bad all occurred in Turkey or Dubai. None of the allegedly false representations made by Sorsby about the investment deal (the existence of the ABN-AMRO SWIFT or the quick and high return that the Alleged Victim might receive in exchange for putting up his money) took place in the United States. No domestic wires (electronic transmissions originating in the United States) were involved in the face-to-face meetings between the Alleged Victim and Sorsby.

## ARGUMENT

### 18 U.S.C. § 1343 DOES NOT APPLY EXTRATERRITORIALLY

The charges in the Indictment must be dismissed because they allege violations of a statute that was never intended for extraterritorial application. "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States" See, *RJR Nabisco, Inc. v. European Community*, 579 U.S. ___ (2016) and *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotation marks and citation omitted).

As in *Morrison*, in *RJR Nabisco*, the Supreme Court held that settled law governing the extraterritoriality reach of domestic statutes provides the necessary guidance in determining whether 18 U.S.C. § 1343 applies to the Defendants' conduct in this case. That determination hinges on whether a given law applies "to events occurring and injuries suffered outside the United States." See, *RJR Nabisco, Inc. v. European Cmty.*, No. 15-138, slip op. at 1 (Sup. Ct. June 20, 2016). As was held in *Morrison*, *RJR Nabisco* found that when the operative events triggering application of a statute and the attendant injuries all occur outside the United States, a law generally does not apply extraterritorially. *Id.* at 7.

*RJR Nabisco* involved the review of a Second Circuit decision reinstating a civil cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The Second Circuit had held that RICO applied extraterritorially only to the extent that the predicate statutes so applied. The Supreme Court ruled that while some RICO predicates do support extraterritorial application of RICO, RICO's private cause of action did not apply to extraterritorial harm. *RJR Nabisco* at 11, 18.

The Supreme Court in *Morrison* and *Kiobel v. Royal Dutch Petroleum* Co., 569 U.S. ——, 133 S.Ct. 1659, 185 L.Ed.2d 671 outlined a two-step framework for analyzing extraterritoriality issues that must be followed by the this Court. First, a court must ask whether the presumption against extraterritoriality has been rebutted—i.e., whether the statute in question gives a clear, affirmative indication that it applies extraterritorially (this question is asked regardless of whether the particular statute regulates conduct, affords relief, or merely confers jurisdiction).

If, and only if, the statute is not found to be extraterritorial at step one, the court must move

7

to step two and examine the statute's "focus" to determine whether the case involves a domestic application of the statute.

If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the relevant conduct to application of the statute occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of whether other conduct occurred in U.S. territory. The teaching of these Supreme Court cases is apropos in this case.

Clearly 18 U.S.C. § 1343 is without an explicit extension of extraterritorial jurisdiction or application. Moreover, as unequivocally stated by the Supreme Court in *RJR Nabisco*, it matters not that some of the conduct of Sorsby (or Shehata) occurred in the United States. What is clear is that the "relevant conduct" of Sorsby, her alleged fraudulent misrepresentations, occurred abroad and, in point of fact, in a variety of foreign countries. This fact, heeding *RJR Nabisco*, makes clear that it is completely irrelevant that a domestic wire was used in the United States by Sorsby after the "relevant conduct" with the Alleged Victim had occurred.

If Sorsby's "relevant conduct" to the underlying fraud took place extraterritorially, constitutionally, she cannot be prosecuted domestically. See, also *United States v. Vilar*, 729 F.3d 62, 72 (2d Cir. 2013) (applying *Morrison* in the criminal context); *U.S. v. Isaacson*, 752 F.3d 1291, 1299 (11th Cir. 2014) (assuming but not deciding that *Morrison* applies to criminal cases). The wire fraud statute supporting the charges against Sorsby simply do not apply extraterritorially, and therefore the Indictment should be dismissed.

To elaborate, the wire fraud statute applies to the transmission of communications by "wire, radio, or television . . . in interstate or foreign commerce" in the execution of a scheme to

defraud. *See*, 18 U.S.C. § 1343. This reference to "interstate or foreign commerce" is the only portion of the statutory text that even arguably has any bearing on its territorial reach. The Second Circuit found this language insufficient to overcome the presumption against extraterritoriality." See, *European Community*, 764 F.3d 129, 139 (2d Cir. 2014). The court there held:

> In *Morrison*, the Supreme Court observed that a "general reference to foreign commerce ... does not defeat the presumption against extraterritoriality." *Morrison*, 130 S.Ct. at 2882. This admonition appears to bar reading these [wire fraud] statutes literally to cover wholly foreign travel or communication. We conclude that the references to foreign commerce in these statutes, deriving from the Commerce Clause's specification of Congress's authority to regulate, do not indicate a congressional intent that the statutes apply extraterritorially.

See, *European Community*, 764 F.3d at 140-141 (footnote omitted).

Here, the only element of the offense Sorsby (and for that matter, Shehata) is charged with violating, as alleged in the Indictment occurring within the territorial United States, was the use of a wire in sending two e-mail messages. That use was limited to one e-mail advising Alleged Victim that a company she controlled would donate money to a hospital he wanted to construct if the project went forward (Doc 18. ¶ 7) and one instructing Shehata to send her a foreign bank account number (Doc. 18, ¶ 15(a)). Neither of these transmissions patently constitute a false statement nor facially, do they evidence the use of a wire perpetuating a scheme to defraud.

Instead, the Indictment refers to statements of Sorsby, allegedly inducing the Alleged Victim to transfer money to Shehata, all of which took place in at least two foreign countries (either Turkey or Dubai) but none of them in the United States. In short, there was no misuse of wires, as alleged in the Indictment than can logically be described as the "gist and crux" of the offense. The allegedly false and misleading statements, when made, were without any nexus whatsoever to the United States. *See United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001);

9

*U.S. v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002) ("the essential conduct prohibited by § 1343 [is] the misuse of wires" in perpetrating a fraudulent scheme (citing *Garlick*, 240 F.3d at 790).

The plain language of 18 U.S.C. § 1343, the interpretation of multiple circuits, the gravamen of the offense, and the specific conduct alleged to have been engaged in by the Defendants in this case do not permit the application of the wire fraud statute. For certain, the allegedly fraudulent conduct of Sorsby took place entirely outside the United States. For this reason the Indictment's wire fraud counts against her and against Shehata must be dismissed.

Similarly, the Indictment fails to allege any specific conduct of Shehata involving the use of a domestic wire to induce the Alleged Victim to participate as an investor in the described financing program. For this reason, the Indictment against Shehata should be dismissed.

## THE DUE PROCESS CLAUSE PROHIBITS THE PROSECUTION OF THE INDICTMENT

Even if this Court determines that the wire fraud statute applies extraterritorially, all counts against Sorsby must nevertheless be dismissed because, given the factual allegations in this case, subjecting Sorsby to prosecution, would violate her right to due process. "In order to apply extraterritorially a federal criminal statute to a defendant consistent with due process, there must be a sufficient nexus between the defendant's conduct and the United States, so that such application would not be arbitrary or fundamentally unfair." See, *U.S. v. Davis*, 905 F.2d 245, 248-249 (9th Cir. 1990) (citation omitted). "The nexus requirement serves the same purpose as the 'minimum contacts' test in personal jurisdiction. It ensures that a United States court will assert jurisdiction over a defendant who 'should reasonably anticipate being hailed into court' in this country." See, *United States v. Klimavicius--Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998).

10

In this case, the Government bears the burden to show that a sufficient nexus exists between Sorsby's conduct and United States to warrant the conclusion that her statements made to a foreign national, in a foreign country about an investment that was to occur completely in another foreign country lacks the necessary nexus. See, *U.S. v. Perlaza*, 439 F.3d 1149, 1169 (9th Cir. 2006) (reversing a conviction where the "district court's failure to require the government to establish nexus" was not harmless).

There are numerous cases in which Courts have concluded that there is a insufficient foreign nexus to justify domestic criminal jurisdiction involving foreign conduct e.g., " . . . where an attempted transaction is aimed at causing criminal acts within the United States . . . [such as] where [a] plan for shipping [] drugs was likely to have effects in the United States. See, *Klimavicius--Viloria*, 144 F.3d at 1257 (internal quotation marks and citations omitted); the intent to sell drugs to buyers in the U.S., *U.S. v. Peterson*, 812 F.2d 486, 493 (9th Cir.1987); the intent to smuggle contraband into United States territory, *Davis*, 905 F.2d at 249; where a defendant laundered ill-gotten profits through United States banks, *United States v. Lazarenko*, 564 F.3d 1026 (9th Cir. 2009); where a foreign defendant administering U.S. funds abroad solicited a bribe in U.S. currency, *Campbell*, 798 F. Supp. 2d at 307; where a United States citizen committed a crime against a foreign victim, *U.S. v. Clark*, 435 F.3d 1100, 1108 (9th Cir. 2006) ("Although Clark's citizenship alone is sufficient to satisfy due process concerns, his U.S. investments, ongoing receipt of federal retirement benefits and use of U.S. military flights also underscore his multiple and continuing ties with this country"); or where some part of the conduct alleged took place inside the territorial United States, *U.S. v. Medjuck*, 156 F.3d 916, 919 (9th Cir. 1998) (foreign defendant used "telephone calls and personal meetings in the United States" to make

arrangements and sent his agent to the United States to deliver money to a boat captain who would facilitate the transfer of drugs).

These cases, along with plain logic, clearly demonstrate that the allegations in this case do not support a sufficient nexus between Sorsby's conduct (or that of Shehata) and the United States to sustain the charges against her. In substance, Sorsby, while an United States resident and citizen, is alleged to have solicited money by false pretenses from a Turkish national, based upon the existence of collateral placed in a bank in the Netherlands, for a construction project to be financed by a bank in Belguim, to be constructed by a company based in Hong Kong. And all of these representations apparently took place in Turkey and Dubai with not one involving the use of a wire in the United States.

There simply does not appear to be any allegation in the Indictment that Sorsby was in the United States when the alleged fraud inducing contacts between Alleged Victim and Sorsby took place. Rather, the sole alleged connection to the United States appears to be her receipt of money into domestic financial institutions for her account and that of Shehata. Perhaps the activities of Sorsby violated Turkish, Belgian or Dutch law. Perhaps not. But because the Indictment concedes that Sorsby's fraudulent acts took place extraterritorially and, further, were made in person and without the use of a domestic wire, the Due Process Clause would be clearly abridged if this Indictment were not dismissed.

In sum, the indictment makes no allegation that any of the alleged misrepresentations or false promises of Sorsby, preceding the transfer of the Alleged Victim's money to Shehata, nor the locus of creation of the false ABN-AMRO documents, allegedly used to perpetrate the underlying fraud, occurred in the United States. None of Sorsby's alleged fraudulent inducing conduct took

place on United States soil. None of the alleged money exchanging hands was from the United States. And there is no allegation that Sorsby's conduct was *intended* to "caus[e] criminal acts within the United States". See, *Klimavicius-- Viloria*, 144 F.3d at 1257.

The fact is that the Circuit Courts in the United States have addressed the extraterritoriality question in contexts other that wire fraud. As stated above, the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), emphatically reaffirmed the presumption against extraterritoriality: "When a statute gives no clear indication of an extraterritorial application, it has none." *Id*. at 2878. The Indictment does not allege that Sorsby's conduct had harmful effects on third parties in the United States. The Alleged Victim's injury, occurred outside the United States when he caused the transfer of his money from a foreign bank to be deposited in the account of Shehata. This was clearly an extraterritorial injury to a foreign national based upon events occurring on foreign soil not directly involved a domestic wire.

Whatever, the significance of Sorsby's or Shehata's domestic conduct might have been in this situation, it is clear that the Indictment, by simply alleging that some domestic conduct occurred cannot support a claim of domestic application of § 1343. See, *Morrison*, 130 S. Ct. at 2884 ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."); id. at 2886-87 (rejecting territoriality test based on "significant and material conduct").

## THE INDICTMENT FAILS TO ALLEGE CONDUCT THAT RISES TO A CRIMINAL OFFENSE

The use of wires is the gravamen of a wire fraud offense under 18 U.S.C. § 1343. However, the substantive wire fraud charge in this indictment does not allege a use of any wires. See Doc 18, ¶¶ 4 through 6. All of Sorsby's alleged acts, underlying the claimed "scheme to

13

defraud", were based upon personal contacts between Sorsby and others in foreign countries. In *United States v. Garlick*, 240 F.3d 789 (9th Cir. 2001), the Ninth Circuit held that the purpose of the wire fraud statutes is to "protect the instrumentalities of communication, making the use of the mails or wires as part of a fraudulent scheme an independent offense." *Id*. at 792. Indeed, the use of the wires is the "gist and crux of the offense." *Ibid*. The court concluded based upon this logic "that each use of the wires constitutes a separate violation of the wire fraud statute." *Id*. at 793. Shehata had no contact with the Alleged Victim prior to his decision to invest in this international financing program.

No uses of wires are described in the allegations of Sorsby's conduct that precipitated the Alleged Victim to send money to Shehata in the United States. While it is true wires were involved *after* the transfer of money occurred, the offense that Sorsby and Shehata are claimed to be guilty of was the inducement of Alleged Victim to send money to the United States not the *sequalae post hoc*. At best, the indictment alleges that Sorsby and Shehata generally used wire communications as part of the scheme. That does not state an offense for wire fraud, because the *actus reus* of an offense under § 1343 is a particular use of the wires *for the purpose of committing fraud*. On this point, the indictment fails.

Further, in order to prove a wire fraud charge, the prosecution must prove that a particular wiring was "incident to an essential part of the scheme." See, *Schmuck v. United States*, 489 U.S. 705, 711 (1989). The use of a wire by Sorsby to explain where money should be sent or her subsequent inquires about the legitimacy of the ABN-AMRO "SWIFT" necessarily fail to allege the connection between the use of a domestic wire and the alleged fraudulent statements of Sorsby in Istanbul, Turkey or Dubai in early 2010. That is because all of the wire related acts took place

*after* the supposed fraudulent representations were made by Sorsby in one or more foreign countries. Thus, none of Sorsby's uses of a wire formed an essential part of the alleged scheme to defraud the Alleged Victim and, therefore, cannot form a basis for a wire fraud criminal offense.

## CONCLUSION

For the foregoing reasons and on the foregoing legal authority, the Indictment as it relates to the wire fraud charges against both Defendant Sorsby and Defendant Shehata should be dismissed in their entirety. Counsel for Defendant Shehata has authorized counsel for Defendant Sorsby to represent that the Defendant Shehata joins in this motion.

Respectfully Submitted,

THE SESSION LAW FIRM, PC

/s/ William T. Session
William T. Session #70629
420 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: 816-842-4949
Fax: 816-842-1815
William@session.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2016, this pleading was filed electronically with the clerk of the court through the CM/ECF system which provided service of this pleading upon all parties of record.

/s/ William T. Session