1              UNITED STATES DISTRICT COURT
                   DISTRICT OF KANSAS
2

3  UNITED STATES OF AMERICA,
                                   Case No. 15-20052-02
4    Plaintiff,

5    v.                            Kansas City, Kansas
                                   Date:  10/17/2018
6  LAURA LEE SORSBY,
   *also known as*
7  Laura Lee Sorsby Dorenbach,
   Laura Lee Dorenbach,
8  Lee Sorsby Dorenbach,

9    Defendant.
   ........................
10

11
                TRANSCRIPT OF CHANGE OF PLEA HEARING
12          BEFORE THE HONORABLE JAMES P. O'HARA
            UNITED STATES CHIEF MAGISTRATE COURT JUDGE
13

14
   APPEARANCES:
15

   For the            D. Christopher Oakley
16 Plaintiff:         United States Attorney's Office
                      500 State Avenue
17                    Suite 360
                      Kansas City, KS 66101
18

19 For the            Shazzie Naseem
   Defendant:         Berkowitz Oliver, LLP
20                    2600 Grand Boulevard
                      Suite 1200
21                    Kansas City, MO 64108

22

23

24  _____
        Proceedings recorded by machine shorthand, transcript
25 produced by computer-aided transcription.

1        (Court called to order.)

2        THE COURT:  At this time the court calls the criminal

3   case styled the *United States versus Laura Lee Sorsby*, Case

4   No. 15-20052-02.  May I please have the appearances of counsel.

5        MR. OAKLEY:  May it please the court, the United

6   States appears by Chris Oakley.

7        MR. NASEEM:  Good afternoon, Your Honor.  Shazzie

8   Naseem appearing on behalf of Laura Lee Sorsby who is present

9   and not in custody.

10        THE COURT:  Mr. Oakley, are there any -- well, strike

11   that.  Has the victim notification been provided with regard to

12   today's anticipated change of plea?

13        MR. OAKLEY:  Yes, Your Honor, both through the agent,

14   and I personally spoke with the victim yesterday.

15        THE COURT:  And that victim has elected not to appear?

16        MR. OAKLEY:  He's in Turkey.  He was scheduled to fly

17   over, but he is not going to appear today, Your Honor.

18        THE COURT:  Okay.  I take it he did not request a

19   postponement or continuance?

20        MR. OAKLEY:  That's correct, Your Honor.

21        THE COURT:  Ms. Sorsby, it's my understanding that

22   we're here today to consider your entry of a guilty plea

23   pursuant to an agreement that you've reached with the

24   government, and further that you're prepared to sign a petition

25   to plead guilty.  Is that consistent with your understanding,

1    ma'am?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Ms. Sorsby, in order for your proposed

4    guilty plea to be considered valid, you must first swear or

5    affirm to answer all my questions truthfully.  In the hopefully

6    unlikely event that you answer any of my questions falsely

7    while under oath or if there are any false statements in your

8    petition to plead guilty, then that testimony and those

9    statements could be used against you in a separate later

10   prosecution charging you with perjury or making a false

11   statement and exposing you to yet additional prison time.  Is

12   that clear and understood?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Please stand so you may be sworn in.

15       (Defendant sworn.)

16           THE COURT:  Ms. Sorsby, it is my understanding that

17   you've been advised of your right to have your guilty plea

18   considered by a United States District Judge, that is one who's

19   been nominated by the President and confirmed by the Senate,

20   but you've consented or agreed to proceed today before me, a

21   magistrate judge, one of lower rank.  Is that correct?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Mr. Naseem, do you have a signed consent

24   to that regard?

25           MR. NASEEM:  I do, Your Honor.

1          THE COURT:  May I see that, please.  The consent

2   executed by the defendant and defense counsel is approved for

3   filing.

4          Ms. Sorsby, many of the questions I'm going to ask you

5   today may seem very strange to you, and at times it may seem as

6   though I'm trying to talk you out of pleading guilty.  But as

7   we get started in this discussion, it's critical that you

8   understand that it makes no difference to me whether you plead

9   guilty under an agreement with the government or whether you

10  decide to take your case to trial some time later.

11         The basic purposes of all the questions I'm going to

12  ask you, in one way or another, are to determine whether you're

13  mentally competent to make an important legal decision such as

14  pleading guilty, that you understand the charge against you,

15  that you're pleading guilty to that charge freely and

16  voluntarily and not the result of any force or threats against

17  you, nor the result of any promises made to you except those

18  that are contained within the four corners of your written plea

19  agreement.  And, finally, we're going to try to verify that

20  your anticipated guilty plea is supportable by admissible

21  evidence the government could present were this case to proceed

22  to trial.

23         Do you understand the basic purposes of these court

24  proceedings?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Do you have any question about the purpose

2     of these proceedings?

3          THE DEFENDANT:  No, I don't.

4          THE COURT:  Ms. Sorsby, if I ask you a question today

5     that you do not hear or understand, I expect you to ask me to

6     repeat or clarify that question.  Along the same line, before

7     you answer any of my questions, if you would like to confer

8     privately with your lawyer for however long you see fit, you're

9     free to do so.  Is that understood?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  State your full name, your date of birth

12    and your current age.

13         THE DEFENDANT:  Laura Lee Sorsby Dorenbach, date of

14    birth is 2/8/53; 65.

15         THE COURT:  How do you spell your last name?

16         THE DEFENDANT:  D-O-R-E-N-B-A-C-H.

17         THE COURT:  Is that your legal name at this point,

18    your last name is Dorenbach as opposed to Sorsby?

19         THE DEFENDANT:  Well, it is kind of both.  When I got

20    a divorce, I was told I could go back to Sorsby but I could

21    also use Dorenbach.  So it's in my divorce decree I could use

22    my maiden name if I wanted to.

23         And also Laura was added on to my name about 15 years

24    -- 20 -- well, longer than that -- 30 years ago.  And I filed a

25    -- my lawyer filed an assumed name under that Laura putting

1    Laura on my name because of a business at the time.  So I go by

2    all of it just to make sure it's all covered.

3           THE COURT:  So I'm clear, under your divorce decree,

4    as opposed to you being restored to your maiden name, your

5    understanding is that that decree gave you the right to use

6    either your former maiden name or your maiden name; correct?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Mr. Oakley, does the government wish to

9    make any motion to amend in light of the defendant's

10   statements?  I'm not suggesting it's necessary, but do you wish

11   to make any motion?

12          MR. OAKLEY:  Yes, Your Honor.  I guess to be safe, I

13   know the indictment was originally filed to include an a/k/a of

14   Laura Lee Sorsby Dorenbach.  And so I would simply make the

15   motion that the a/k/a Laura Sorsby Dorenbach be added to the

16   information.

17          THE COURT:  Any objection, Mr. Naseem?

18          MR. NASEEM:  No, Your Honor.  And I would only add

19   that, in our petition to plead guilty to the information, we

20   also have Laura Lee Sorsby listed because that was what was

21   listed in the original superseding indictment and then Laura

22   Lee Dorenbach and Lee Sorsby Dorenbach.  So we don't object at

23   all to the government's motion, and we would also add that and

24   Lee Sorsby Dorenbach obviously.

25          THE DEFENDANT:  It's on my passport as Lee Sorsby

1   Dorenbach and on my driver's license also.

2           THE COURT:  Very well.  The government's motion

3   without objection is granted.

4           Ms. Sorsby, do you understand that when Mr. Oakley

5   refers to an information, that is a charging document that has

6   just recently been filed by his office?  I believe it was filed

7   earlier today.

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Okay.  Have you seen that document before?

10          THE DEFENDANT:  Yes.  Yes, Your Honor.

11          THE COURT:  Okay.  And you've visited with Mr. Naseem

12  about it; correct?

13          THE DEFENDANT:  Yes.  Yes, I have.

14          THE COURT:  Do you understand, Ms. Sorsby -- and I'm

15  going to address you as such for the balance of today's

16  proceedings unless you have any objection.

17          THE DEFENDANT:  No.

18          THE COURT:  Do you understand that the charge against

19  you as presented in the information -- and I'm summarizing --

20  is that between November 19, 2010 and continuing until on or

21  around April 2014, that you committed the crime of what's known

22  as misprision of a felony, specifically you had knowledge of a

23  commission of a felony, specifically wire fraud, that you

24  concealed that felony and you failed to make it known in a

25  timely manner to the proper authorities.  Do you understand

1   that's the charge against you?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Do you understand, Ms. Sorsby, as

4   indicated in the first paragraph of your plea agreement, if

5   you're convicted of that charge, whether based on a guilty plea

6   or a jury verdict, the maximum sentence that could be imposed

7   against you would be up to three years in prison, a fine of up

8   to a quarter of a million dollars, up to a year of supervised

9   release following imprisonment, restitution to the victim in

10  question, and finally, a hundred-dollar mandatory special

11  assessment?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And to be clear, we'll go through this in

14  more detail, the agreement that you have with the government,

15  which still needs to be reviewed by the presiding district

16  judge, Carlos Murguia, contemplates a lower sentence.  But do

17  you understand what the maximum sentence is?

18         THE DEFENDANT:  I believe so.  Three years?

19         THE COURT:  Yes, ma'am.

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Okay.  Do you understand, Ms. Sorsby, that

22  if you're sentenced, after pleading guilty to this charge, and

23  if you later violate the terms of your supervised release, the

24  court could send you back to prison for yet additional time?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Mr. Oakley, what's your understanding of

2     the defendant's maximum exposures for any one such violation of

3     supervised release?

4          MR. OAKLEY:  I believe that to be one year, Your

5     Honor.

6          THE COURT:  Do you agree, Mr. Naseem?

7          MR. NASEEM:  I do, Your Honor.

8          THE COURT:  Do you understand that, Ms. Sorsby?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Ms. Sorsby, where were you born?

11          THE DEFENDANT:  Where?

12          THE COURT:  Where.

13          THE DEFENDANT:  Warren, Arkansas.

14          THE COURT:  And have you always been and still are

15     today a citizen of the United States?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  What's the extent of your formal

18     education?

19          THE DEFENDANT:  I've gotten the first year of college,

20     something right in there.  I didn't get a four-year degree or

21     anything.

22          THE COURT:  Are you able to read and write at least at

23     the high school graduate level?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  Have you ever been treated for

1   mental illness, been confined to an institution or facility

2   because of mental illness, or had a court decide that you were

3   mentally ill or incapacitated in any way?

4           THE DEFENDANT:  No, Your Honor.

5           THE COURT:  During the last 48 hours, have you

6   consumed any alcoholic beverages?

7           THE DEFENDANT:  No, Your Honor.

8           THE COURT:  During that period, have you taken any

9   drugs, medicines or pills of any kind, whether they be

10  prescription drugs, street drugs or otherwise?

11          THE DEFENDANT:  I took some prescription drugs.

12          THE COURT:  Specifically what did you take?

13          THE DEFENDANT:  I take a thyroid.  It's a thyroid

14  medication.

15          THE COURT:  Okay.  Is that the only one?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  Fair to say that does not impair or

18  hurt your ability to understand what's going on around you?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  You're able to concentrate and think

21  clearly today; correct?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Would it be a fair statement, Ms. Sorsby,

24  that while this case has been pending you've had sufficient

25  time, in your opinion, to visit with Mr. Naseem to discuss the

1  case in general, and more recently in particular to go over the

2  terms of the -- the information that's been filed that we've

3  already discussed along with your plea agreement and your plea

4  petition?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And as relates to those three documents

7  that I have specifically mentioned, you've had an opportunity

8  and did, in fact, exercise the opportunity to read through them

9  in their entirety; by that I mean literally word-for-word?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  In addition, Mr. Naseem has discussed with

12  you his review of all of the documents and any other evidence

13  produced by the government in connection with the charge

14  against you?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  He has discussed with you the various

17  advantages and the disadvantages associated with a plea

18  agreement with the government as opposed to taking your case to

19  trial; true?

20          THE DEFENDANT:  True.

21          THE COURT:  And one of the advantages that he would

22  have discussed of going to trial is the possibility that a jury

23  might hear all the evidence against you, return a verdict of

24  not guilty on any and all charges and relieve you of any

25  criminal responsibility to the government; true?

1        THE DEFENDANT:  True.

2        THE COURT:  On the flip side of that question, he

3   would have discussed with you that one of the disadvantages of

4   going to trial is a jury might hear all that evidence, return a

5   verdict of guilty on one or more of the charges against you and

6   expose you to a prison term and sentence more severe than what

7   you hoped for under your plea agreement with the government?

8        THE DEFENDANT:  True.

9        THE COURT:  Are you completely satisfied with the

10  legal advice and representation provided to you by Mr. Naseem

11  in this case?

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  Do you understand, Ms. Sorsby, that while

14  the vast majority of criminal cases do tend to be concluded

15  with some kind of agreement between the government and the

16  defendant, there is no requirement that you do so in this

17  particular case?

18       THE DEFENDANT:  Yes, sir.

19       THE COURT:  In other words, you have the absolute

20  right should you choose to exercise it to force this case to

21  trial and force the government to try to prove that you did

22  something wrong?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Mr. Oakley, I noticed that the factual

25  basis portion of the plea agreement, specifically paragraph 2

1   toward the bottom of the second page, indicates various

2   property that the defendant, Ms. Sorsby, acquired with the

3   victim's money.  Is any of that property to be forfeited under

4   this plea agreement?

5           MR. OAKLEY:  Not under the plea agreement, Your Honor.

6   There is a separate civil case that involves that which will

7   need to be resolved.  But the -- as part of this plea

8   agreement, we are not making any agreements with -- as it

9   relates to that civil case.

10          THE COURT:  So both parties reserve all their rights

11  to claim an interest in the two motor vehicles and the three

12  pieces of real estate; correct?

13          MR. OAKLEY:  Yes, Your Honor.  And that's being

14  handled by another attorney from my office.  I know that

15  there's been negotiations.  They may have already reached

16  agreements as far as that property, but this plea agreement

17  does not contemplate any such agreement.

18          THE COURT:  Okay.  As I touched on a moment ago,

19  Ms. Sorsby, do you understand that this plea agreement,

20  although does not include forfeiture, does include a

21  restitution component?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And specifically do you understand that if

24  this plea agreement ultimately is accepted by Judge Murguia,

25  there would be a restitution order, that is an order requiring

1    you to repay $8,362 -- excuse me -- $8,362,200 to Dr. Said

2    Haifawi?  Do you understand that?

3                THE DEFENDANT:  Yes, sir.

4                THE COURT:  Mr. Oakley, would I be correct in assuming

5    that that restitution order would be non-dischargeable in

6    bankruptcy?

7                MR. OAKLEY:  That's my understanding, Your Honor.

8                THE COURT:  Is that consistent with your

9    understanding, Mr. Naseem?

10                MR. NASEEM:  Yes, it is, Your Honor.

11                THE COURT:  Do you understand that, Ms. Sorsby?

12                THE DEFENDANT:  Now I do.

13                THE COURT:  So let me be more blunt.  Do you

14    understand if this plea agreement goes through --

15                THE DEFENDANT:  Uh-huh.

16                THE COURT:  -- and you're ordered to repay the victim

17    of your crime in excess of $8.3 million, do you understand

18    you're not going to be able to wipe that out in bankruptcy?

19                THE DEFENDANT:  Yes, sir, I understand.

20                THE COURT:  Ms. Sorsby, I do not have any information

21    before me with regard to any criminal history that you might

22    have.  But, in any event, if you are on probation, parole or

23    supervised release in connection with any other case, whether

24    it be federal, state or local, at the time of your commission

25    of the alleged offense in this case which spanned a period of

1   nearly four years, then I want to make sure you understand that

2   as a result of pleading guilty today your release in any such

3   other case could be revoked and you could be required to serve

4   prison time consecutively, that is on top of the federal

5   sentence that you likely will receive in this case.  Do you

6   understand that?

7           THE DEFENDANT:  No, I have no criminal record, Your

8   Honor.

9           THE COURT:  Okay.  Mr. Oakley, that's consistent with

10  your understanding as well at this point at least?

11          MR. OAKLEY:  Yes, Your Honor.  I believe that there's

12  a warrant for a traffic offense, speeding ticket.  But other

13  than that, I know of no criminal history.

14          THE COURT:  Incidentally -- and typically we'll talk

15  about this later, but in light of your comment, Ms. Sorsby, I

16  do want to point out to you if this plea is accepted today even

17  conditionally, the next step in the process is that I will

18  order the probation office of our court to conduct what's known

19  as a presentence investigation.  That's a very thorough

20  process, one component of which is a full criminal history

21  check.

22          If it turns out that you do have a criminal history

23  and if you were on probation, parole or supervised release at

24  the time of your commission of these offenses -- or this

25  offense, I should say, in this particular case, then that could

1   result in additional prison time.  Do you understand that?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Okay.  Am I correct, Mr. Oakley, that

4   Ms. Sorsby was previously charged under indictment?

5           MR. OAKLEY:  Yes, Your Honor, under a superseding

6   indictment.

7           THE COURT:  Okay.  Ms. Sorsby, as we've discussed, the

8   current charge to which it's anticipated you'll be pleading

9   guilty is presented not by way of indictment but rather a

10  information filed by the U.S. Attorney's Office.  The reason I

11  point this out is that a defendant who is charged with a

12  felony, that includes the crime here, is constitutionally

13  entitled to insist upon indictment.  An indictment is a

14  probable cause finding made by a grand jury.  The grand jury is

15  summoned from the community at random and consists of anywhere

16  between 16 and 23 persons.

17          When it convenes, the U.S. Attorney's Office presents

18  evidence.  But notably, unless at least 12 persons of the grand

19  jury conclude that there's probable cause that a crime was

20  committed and that you are the person who committed that crime,

21  no indictment could be returned on that particular charge.

22  However, the government is free to come back at a later date

23  and present more or better evidence.

24          Now, even though you are constitutionally entitled to

25  insist upon this charge of misprision of a felony being

1   presented by an indictment, you may, if you wish, for practical

2   reasons, or those associated with your plea agreement, waive or

3   give up that right.  My question is whether you wish to waive

4   an indictment and proceed on this information alone?

5          (Defendant conferring with counsel.)

6                  THE DEFENDANT:  Yes, Your Honor.

7                  THE COURT:  Ms. Sorsby, regardless of whether a

8   defendant is proceeding on an indictment or information, she

9   has the right to plead guilty, not guilty, or no contest.  Now,

10  even though you plan to plead guilty today, the reason I point

11  this out is that a defendant who pleads not guilty or persists

12  in a prior plea of not guilty enjoys several very important

13  constitutional rights.  Most importantly she has the right to a

14  speedy public trial by jury with the jury selected at random

15  from the community.

16          In addition, the defendant has the constitutional

17  right to the continued assistance of her lawyer, not just at

18  trial but at all stages of the proceedings, including on appeal

19  if it's necessary to correct any legal mistakes made before or

20  during trial.

21          If you took your case to trial, you would have the

22  constitutional right to see, hear and have your lawyer question

23  every witness called to testify against you by the government.

24          In addition, if you thought it would help your case,

25  you could call witnesses on your own behalf and you could use

1    the subpoena power of our court to force the attendance of

2    those witnesses and the production of physical evidence in the

3    courtroom but you would have no obligation to present such

4    evidence.

5            Further, you could testify in your own behalf if you

6    thought it would help your case.  But even more importantly,

7    you would have the actual right at trial to remain silent,

8    which means the government couldn't force you to take the

9    witness stand, testify and possibly incriminate yourself.

10           If you exercise your right to remain silent at trial,

11   the judge presiding over that trial would instruct the jury to

12   draw no negative or adverse inference of guilt based on your

13   silence.  You would be presumed innocent until such time, if

14   ever, that the government came forward with sufficient evidence

15   to persuade all 12 members of the jury hearing the case as well

16   as the judge that you are guilty beyond a reasonable doubt,

17   which is the highest standard of proof.  You would have no

18   burden or obligation to prove your innocence, and the jury

19   would be instructed to presume you're innocent certainly.

20           Now, if you plead guilty today as planned, you'll be

21   admitting all the facts alleged against you in the information.

22   As a result, there won't be any trial of any kind, whether in

23   front of a jury or a judge.

24           Ms. Sorsby, do you understand these very important

25   constitutional rights that you would be giving up by pleading

1   guilty and wish to do so?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Ms. Sorsby, the United States Sentencing

4   Commission has determined that certain offenses, such as the

5   one to which you plan to plead guilty, should be subject to

6   what is known as guideline sentencing.  The guidelines involve

7   a very thick set of documents with a lot of detailed material

8   within them.  But very generally, under the guidelines the

9   length of any defendant's sentence is going to be driven by two

10  things:  first, the offense level, and secondly, her criminal

11  history.  So, as a general proposition, the higher the offense

12  level, the more extensive one's criminal history might be, the

13  longer the sentence is going to be.  And conversely, the lower

14  the offense level and the extent or absence of criminal history

15  would suggest a much lower sentence.

16          Now, I'm not going to ask you to divulge here in open

17  court on the record what you've discussed in private and in

18  confidence with Mr. Naseem.  Still, would it be a fair

19  statement that you and he have discussed the existence of these

20  Sentencing Guidelines and generally how they might operate in

21  your particular case given what is currently known about your

22  absence of criminal history?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Now, putting aside the negotiated terms

25  that apply between you and the government at this point, would

1    it be a fair statement that Mr. Naseem has provided you his

2    professional judgment or estimate of where your case would

3    likely fall within the guidelines based on the facts now known?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  In other words, he's given you an estimate

6    or a range from shortest to longest sentence you could

7    reasonably anticipate given the facts as we know them today?

8            THE DEFENDANT:  Mainly the longest.

9            THE COURT:  Okay.  But he's given you the benefit of

10   your outside exposures in his judgment; correct?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Now, do you understand that even though a

13   lawyer, even an exceptionally skilled one like Mr. Naseem,

14   provided that kind of estimate, that's not a guarantee upon

15   which a defendant is entitled to rely?

16           THE DEFENDANT:  Oh, you mean as being the most or the

17   less?

18           THE COURT:  Right.  Specifically that you're not

19   entitled to rely upon his estimate as to the maximum sentence

20   that you would receive.

21           THE DEFENDANT:  Right.  Yes, sir.

22           THE COURT:  Do you understand that there's always some

23   risk in this process, given the complexity of it, that the

24   lawyer's judgment is off; that is, in error?

25           THE DEFENDANT:  Yes, sir.  I could understand where --

1    I don't know be an error, but they could be wrong about the

2    time or whatever.

3              THE COURT:  Right.

4              THE DEFENDANT:  It would be up to the court or the

5    judge.

6              THE COURT:  Do you understand that the mere fact that

7    Mr. Naseem might have made a mistake -- I'm not implying that

8    he has or he often does.  But do you understand that the mere

9    fact that he might make a mistake in estimating your maximum

10   exposures, that fact alone would never provide you any basis to

11   withdraw or take back your guilty plea?

12             THE DEFENDANT:  I understand.

13             THE COURT:  In other words, you understand if he makes

14   a mistake, you're still stuck with your guilty plea?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  If your guilty plea is entered today,

17   Ms. Sorsby, the probation department, in conducting the

18   investigation I mentioned, and Judge Murguia, in imposing

19   sentence later, will look at all the factors required under the

20   applicable statutes, including so-called departures and

21   variances from the guidelines, and most notably they will be

22   looking at the following factors:

23             The nature and history of your crime and your own

24   history and characteristics, how to promote respect for the law

25   and provide just punishment for your crime, how to reflect the

1  seriousness of your crime, how to deter or discourage other

2  individuals from committing similar crimes, how to protect the

3  public from further crimes being committed by you, how to

4  provide you effective correctional treatment, how to provide

5  appropriate restitution to the victims of your crime, and

6  finally, how to avoid unwarranted differences in the sentences

7  that are handed out to defendants who have similar criminal

8  histories or lack thereof and who have committed similar

9  offenses.  Do you generally understand these factors that will

10 be considered?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Now, as I mentioned, the court has the

13 discretion to depart or vary from the guidelines in certain

14 circumstances.  And although the court is required as a matter

15 of law to analyze and set your sentence under the guidelines,

16 the individual guidelines are advisory only and thus leave the

17 sentencing judge a great deal of discretion as to how they

18 should apply.  Do you understand that?  In other words, do you

19 understand this isn't just a computer we stick information in

20 and spit out a result?  Do you understand that?

21          THE DEFENDANT:  Is the computer that decides not --

22          THE COURT:  Not.

23          THE DEFENDANT:  Okay.  Not.

24          THE COURT:  There's a real, live person --

25          THE DEFENDANT:  Okay.

1          THE COURT:  -- called Carlos Murguia who's going to

2     look at all the information in this case.

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  He's going to decide what's appropriate in

5     your particular situation.

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  You understand he will not be mechanically

10    or rigidly imposing the guidelines, but rather applying them in

11    his discretion as he sees fit?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you understand that because of the

14    number of moving parts or variables that are involved in here,

15    there's -- there's no way to tell for certain what your

16    sentence is going to be?

17         THE DEFENDANT:  Yes, sir.  I mean...

18       (Defendant conferring with counsel.)

19         THE COURT:  Well, let me get into this, because I

20    think I know where -- I can see you're perplexed, Ms. Sorsby.

21    The agreement you reached with the government, the lawyers

22    would call this an 11(c)(1)(C) deal.  Do you understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Okay.  And do you understand that, under

25    this particular form of plea agreement, you on the one hand and

1   the government on the other have jointly proposed as the

2   appropriate sentence various terms?  Do you understand that?

3               THE DEFENDANT:  Yes, sir.

4               THE COURT:  Do you understand that would include

5   24 months in a federal prison, one year of supervised release

6   following imprisonment with the condition that the defendant be

7   placed on house arrest for six months of that one-year period,

8   along with no fine, a mandatory special assessment of a hundred

9   dollars, and restitution in the amount of $8.362 million to the

10  victim?  Do you understand that?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  Do you understand that we're not going to

13  be making a decision today on whether that sentence is to be

14  accepted?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Do you understand that decision won't be

17  made until after the presentence investigation has been

18  conducted, the report prepared, the parties have a chance to

19  weigh in or object on that, present any additional information,

20  and Judge Murguia makes the final decision?  Do you understand

21  that?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  Do you understand that if he gets all that

24  information, including the presentence investigation report,

25  and if he concludes at that point that he does not want to

1   accept this jointly-proposed sentence, that he will give you,

2   as well as the government, notice of that and an opportunity to

3   back out?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Do you understand that if he gives you

6   that opportunity to back out, that is to withdraw your guilty

7   plea that you plan to enter today, that at that point you would

8   be allowed to proceed to a jury trial and nothing said during

9   today's change of plea hearing could be used against you at

10  trial?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Now, conversely do you understand that if

13  Judge Murguia gives you the opportunity to back out after

14  expressing some reluctance to approve this deal, if you decide

15  you want to go forward and you're not going to withdraw your

16  guilty plea, do you understand at that point he is not limited

17  to the terms outlined in this plea agreement?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  In other words, you understand he has the

20  right, so long as it's under the guidelines, to go up to the

21  maximum sentence we talked about before?

22          THE DEFENDANT:  Would that be if I go to trial or no?

23          THE COURT:  Well, you have to be convicted first.  You

24  might go to trial and be acquitted.  Do you recall that?

25          THE DEFENDANT:  No -- yes, but I'm confused.

1         THE COURT:  Okay.  Let's back up again.  Let's assume

2   that the presentence report comes out.

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  Judge Murguia sends notification to

5   Mr. Naseem and Mr. Oakley that Mr. -- or the -- Judge Murguia

6   has some misgivings about the proposed sentence that you've

7   agreed to.  You with me so far?

8         THE DEFENDANT:  Yes.

9         THE COURT:  And then he says I'm giving you an

10  opportunity to back out, take back your guilty plea.

11        THE DEFENDANT:  Okay.

12        THE COURT:  You with me?

13        THE DEFENDANT:  I'm with you.

14        THE COURT:  Okay.  And let's assume, under that

15  scenario, you decide you're going to forge ahead

16  notwithstanding his misgivings.  You with me?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Okay.  At that point if you elect not to

19  withdraw your guilty plea and go forward, do you understand

20  then at that point Judge Murguia could impose a sentence --

21  accepting your guilty plea impose a sentence greater than what

22  you agreed to?

23        THE DEFENDANT:  I understand it now.

24        THE COURT:  Did you understand it before you got here

25  today?

1          THE DEFENDANT:  I'm a little confused but -- sorry.

2          THE COURT:  Mr. Naseem, why don't you take a minute to

3     visit with your client if you would, please.

4          MR. NASEEM:  Thank you, Your Honor.

5        (Defendant conferring with counsel.)

6          THE COURT:  Okay.  Ms. Sorsby, you've had a chance to

7     visit with Mr. Naseem more about the scenario that I described

8     where Judge Murguia expresses some reluctance to accept the

9     plea deal?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  And do you now understand that if he

12    expresses that discomfort, gives you an opportunity to withdraw

13    your guilty plea and you elect not to do so and proceed to

14    sentencing, at that point Judge Murguia is not limited by the

15    sentence that is provided for in this plea agreement?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Okay.  As we've discussed at that point,

18    provided it's under the guidelines, Judge Murguia would be able

19    to go up to the maximum three years sentence as opposed to the

20    two-year sentence that you negotiated for with the government.

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Now, earlier we visited about your waiver

23    of right to indictment and I neglected to have you confirm that

24    in writing.  I've had the courtroom deputy hand to Mr. Naseem a

25    written waiver of indictment.  Has that now been signed?

1          MR. NASEEM:  We have one, Your Honor, that was

2     prepared in advance.  We can provide both if you want.

3          THE COURT:  Thank you.  That waiver is approved for

4     filing.

5          Okay.  So let's assume that it's proceeding to

6     sentencing, whether under the plea agreement or otherwise.  Do

7     you understand that at that point Judge Murguia will be

8     entitled to consider any evidence concerning your character,

9     conduct and background provided it's merely deemed reliable as

10    opposed to being proved by beyond a reasonable doubt?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  In other words, if the case goes to trial,

13    the government would have to prove its case beyond a reasonable

14    doubt, the very high standard of proof we talked about before.

15    Do you recall that?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  You understand that high standard doesn't

18    apply when it comes time for sentencing?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you understand that, in addition to

21    considering any reliable evidence of the sort I just mentioned,

22    Judge Murguia will also consider what is known as all relevant

23    criminal conduct.  So if there were other crimes beyond the one

24    to which you are pleading guilty today that were committed

25    during the same time frame, if that information is presented to

1    Judge Murguia, that's fair game and may be considered for

2    purposes of imposing a just sentence on the one charge to which

3    you are pleading guilty.  Do you understand that?

4        (Defendant conferring with counsel.)

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  In other words, or, for example -- and I

7    don't have the original indictment or the superseding

8    indictment in front of me -- but if either of those charging

9    documents accused you of other crimes beyond misprision of a

10   felony, that information, provided it's established at the

11   sentencing hearing, may be considered by Judge Murguia for

12   purposes of imposing sentence on the one charge to which you

13   are pleading guilty even though you've not admitting guilt on

14   those.  Do you understand how that works?

15       (Defendant conferring with counsel.)

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Do you understand, Ms. Sorsby, that

18   because of all the factors we've been discussing this

19   afternoon, as a practical matter there's no guarantee that any

20   of us can give you that ultimately at the end of the process

21   you'll have received any benefit as a result of your decision

22   to plead guilty as opposed to going to trial?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  As we've discussed, if you went to trial

25   and if you were convicted, you could appeal.  And, under

 1   certain circumstances, a person in that situation may file

 2   what's known as a collateral attack, that is a separate legal

 3   proceeding that challenges some aspect of your prosecution,

 4   conviction or sentence.  And the reason I point this out,

 5   Ms. Sorsby, is in your plea agreement, if you'll turn to

 6   paragraph 12 on pages 7 and 8, there is a very broadly drafted

 7   waiver of your rights to appeal and collateral attack.  Now,

 8   subject to very limited exceptions, principally involving

 9   ineffective assistance of counsel, this language means you're

10   giving up virtually all of your rights of appeal and collateral

11   attack.  Do you understand that?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  You told me that you've read every single

14   word of this plea agreement before; true?

15            THE DEFENDANT:  Yes, most of it.  I -- I have read it

16   but I -- there was two different ones and we just made some

17   corrections in the second one, so...

18            THE COURT:  Okay.  What were those changes?

19            THE DEFENDANT:  Yesterday.

20            MR. NASEEM:  Your Honor, I will only highlight that

21   the changes related to the factual basis.  Mr. Oakley and I had

22   an exchange this morning and it related to changing -- I don't

23   have the e-mail in front of me -- but essentially deleting

24   Ms. Sorsby from a connection to Shehata as it related to --

25   this is on page 2 of the factual basis -- but the leading

1   connection to Mr. Shehata by saying Shehata and Sorsby used it

2   for personal items.  We deleted "Sorsby" from that.

3           And in addition to that then we added language

4   indicating the following:  Sorsby used some of the money

5   received from the victim to travel to meet with the victim

6   overseas, and then the "to buy following property" was already

7   there.

8           Those were the two minor changes that were made this

9   morning.  That is the only difference between what Ms. Sorsby

10  has reviewed previously and that we have gone through in

11  today's version, which we met before we came to court today and

12  we went through those changes.

13          THE COURT:  Thank you, Mr. Naseem.

14          Ms. Sorsby, for reasons you may or may not be able to

15  appreciate, I want there to be zero chance that you're going to

16  come back to this court some day later and say I didn't read

17  these papers --

18          THE DEFENDANT:  Yes.

19          THE COURT:  -- I didn't understand them.

20          THE DEFENDANT:  Right.

21          THE COURT:  So I'm going to go back to the questions I

22  was asking you before.  Now, with regard to the prior version

23  of the plea agreement which had -- I guess which was -- did not

24  have the changes isolated in the factual narrative in

25  paragraph 2 as to that draft of the prior agreement, did you

1   read it in its entirety; by that I mean literally

2   word-for-word?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  And you've had opportunity to discuss all

5   of the provisions of the plea agreement along with the

6   information in the plea petition with Mr. Naseem; correct?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  And you have also reviewed the corrected

9   version of the plea agreement picking up a few changes that

10  Mr. Naseem cited in paragraph 2; true?

11          THE DEFENDANT:  That's true.

12          THE COURT:  Ms. Sorsby, does the plea agreement that

13  you've signed today evidently contain all of the promises and

14  understandings between you and the government that relate to

15  this case?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Let me ask you the same question just a

18  little bit differently:  Are there any verbal agreements or

19  side deals that relate to this case?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Has anybody forced or threatened you in

22  any way to try to get you to plead guilty today?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Are you telling me that you're pleading

25  guilty today because you believe you are, in fact, guilty as

1  charged?

2       THE DEFENDANT:  Yes.

3       THE COURT:  Ms. Sorsby, a number of bad things could

4  happen to you as a result of your decision to plead guilty

5  today.  I don't have a crystal ball, so I can't tell you all

6  the bad things that could happen but I can give you at least

7  two examples.

8       First, if you're ever convicted of another crime,

9  whether it be the sort alleged in the information or otherwise,

10 your sentence in that later case could and probably would be

11 made longer as a result of your conviction here today.  Do you

12 understand that?

13      THE DEFENDANT:  Yes, Your Honor.

14      THE COURT:  Secondly, do you understand because this

15 is a felony to which you're pleading guilty that it could

16 result in you being stripped of important constitutional rights

17 that you currently enjoy as a United States citizen, most

18 notably the right to vote, to hold public office, to serve on a

19 jury and to lawfully possess a firearm?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  Mr. Naseem, are you aware of any other

22 collateral consequences that would befall your client if she

23 pleads guilty to this felony charge?

24      MR. NASEEM:  The only other issue that we'll have to

25 explore, Your Honor, would be those related to any kind of

1   potential benefits that she would receive from Social Security,

2   or Medicare, Medicaid.  We would explore those as relates to

3   sentencing.  If appropriate, would make appropriate arguments

4   to the judge about those.  But other than those, I'm not aware

5   of any additional consequences.

6           THE COURT:  Okay.  Ms. Sorsby, let's go back to the

7   paragraph 2 in the plea agreement which has evidently been

8   edited somewhat today, which is fine.  Do you have that before

9   you, ma'am?

10          THE DEFENDANT:  I'm getting it.  Just a second.  Yes,

11  sir.

12          THE COURT:  Okay.  Now, I don't mean to belabor this,

13  but you've read ever single word contained within the six

14  paragraphs that are outlined on page 2 of the agreement;

15  correct?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And, as indicated by the lead-in language

18  at the very top of the page, you're agreeing with the

19  government that the facts constituting the offense to which

20  you're pleading guilty are set forth as we've described;

21  correct?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Is there anything contained within this

24  factual narrative that you believe to be factually incorrect in

25  a material sense?

1      THE DEFENDANT:  I'm sorry, I was reading it again just

2 to be sure.  Okay.

3      THE COURT:  Take whatever time you like and however

4 long you like.

5    (Defendant conferring with counsel.)

6      MR. NASEEM:  Your Honor, I think maybe the only

7 possible change -- I've not talked to the government about

8 this -- would be various accounts held in Sorsby's name instead

9 maybe perhaps Can Am's name.  I think that was the accounts to

10 which they were transferred.  Can Am was the name of the

11 business that she operated.  They were technically under her

12 direction.  She was the owner of that business.  But, you know,

13 I can talk to the government about that right now and see if

14 that makes a difference at all.

15      THE COURT:  I think that would be prudent.

16      MR. NASEEM:  Okay.

17      THE COURT:  Once you all have settled on a final

18 version of this, I would like to see it.  It would have been

19 nice to see it before we started this exercise but...

20    (Counsel conferring.)

21      THE COURT:  If there are changes to be made, what I

22 would ask is that they be marked up on the original agreement

23 and each of you initial them so there's no dispute later on

24 about who agreed to what.

25    (Counsel marking.)

1          MR. NASEEM:  Your Honor, for purposes of making the

2     record clear, what we have done with respect to the -- on

3     page 2 -- 1, 2, 3 -- 4th paragraph, last sentence, there is the

4     sentence that reads, "On November 10th, 2010, victim wired

5     2 million euros to Sorsby's attorney who transferred some of

6     the money to various accounts held in Sorsby's or

7     Can Am International, LLC's name," and that's been initialed by

8     all three of us, that would be myself as the attorney for

9     Ms. Sorsby, Mr. Oakley as the government attorney, and

10    Ms. Sorsby as the defendant in this case.

11         THE COURT:  Mr. Naseem, I want to make sure I'm

12    following this.  The other changes that you mentioned in terms

13    of the -- that were made relatively to the draft that your

14    client read through entirely, those have been retyped on the

15    final draft?

16         MR. NASEEM:  They have been retyped on the final

17    draft, and I actually do have a copy of the previous draft with

18    me.  And so for -- does the court have the prior draft in front

19    of it?

20         THE COURT:  I think so.

21         MR. NASEEM:  I'm sorry.

22         THE COURT:  I've got one draft you provided to me.

23         MR. NASEEM:  I'm sorry.  So the final paragraph of

24    that on page 2, again, of the factual basis, we added in --

25    instead of "Shehata and Sorsby used it for personal items," we

1   amended that to "Shehata used it for personal items and sent

2   money -- and sent part of the money to the other conspirators."

3   So we took out "and Sorsby" in that sentence.

4           And then in the third sentence we changed that -- I

5   guess it's the second sentence -- but it reads, "Sorsby used

6   some of the money received from the victim to travel to meet

7   with the victim overseas and to buy the following property."

8           THE COURT:  Thank you.

9           MR. NASEEM:  And in the version that the court will

10  receive as the original, these changes have been typed, and the

11  one that we've just discussed now has been added by hand.

12          THE COURT:  Great.  About Can Am; correct?

13          MR. NASEEM:  About Can Am, correct.

14          THE COURT:  Thank you, Mr. Naseem.

15          MR. NASEEM:  I believe those are all the changes that

16  are necessary for today.

17          THE COURT:  Okay.  Ms. Sorsby, let's go back to the

18  question I was asking you about 10 minutes ago.  Looking at the

19  final draft of the plea agreement, and specifically paragraph 2

20  on page 2, including the typewritten and the handwritten

21  portions, is there anything in there that you believe to be

22  materially inaccurate?

23          THE DEFENDANT:  No.  No, Your Honor.

24          THE COURT:  As I mentioned at the beginning of this

25  exercise, one of the basic purposes of the proceeding is for me

1   to make an independent determination that there's a factual

2   basis for your plea.  Mindful, Ms. Sorsby, that you probably

3   didn't have a hand in drafting this provision, is there any

4   additional information that you believe I ought to be aware of

5   in order to make a judgment about whether there is a proper

6   factual basis for your plea?

7           THE DEFENDANT:  I'm sorry, can you repeat that again?

8           THE COURT:  Yeah.  I think you were otherwise occupied

9   evidently.

10          THE DEFENDANT:  I'm sorry.

11          THE COURT:  Is there any additional information that

12  you believe ought to be made available to me before I make a

13  judgment as to whether there is a factual basis for your plea;

14  in other words, is this narrative incomplete or out of context

15  in any material way?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  And you would agree, therefore, this

18  second paragraph of your plea agreement fairly, completely, and

19  in context describes your conduct during the period in

20  question; true?

21          THE DEFENDANT:  True.

22          THE COURT:  Mr. Oakley, do you wish to make any

23  additional record on the factual basis for Ms. Sorsby's plea?

24          MR. OAKLEY:  No, Your Honor.

25          THE COURT:  And am I correct, Mr. Oakley, that the

1   government is in a position to establish all the facts outlined

2   in paragraph 2 of the plea agreement beyond a reasonable doubt

3   to the satisfaction of a unanimous jury and the trial judge and

4   satisfy all the essential elements under the statute charged?

5           MR. OAKLEY:  Yes, Your Honor.

6           THE COURT:  Mr. Naseem, do you have any reason to

7   dispute that representation?

8           MR. NASEEM:  No, Your Honor, I don't.

9           THE COURT:  Do you have any comments on or objections

10  to paragraph 2 of the plea agreement?

11          MR. NASEEM:  No, Your Honor.

12          THE COURT:  Ms. Sorsby, although you've received

13  presumably excellent advice and representation from Mr. Naseem

14  in this case, would it be a fair statement that the final

15  decision to plead guilty today is yours and yours alone?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Has Mr. Naseem ever stated to you or

18  implied to you through words or conduct that you must plead

19  guilty today instead of taking your case to trial later?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Indeed to the contrary, he's made crystal

22  clear to you that if you decided you wanted to go to trial,

23  he'd do his level best to represent your interests at trial?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Mr. Naseem, are you confident that

1    Ms. Sorsby is competent to plead guilty today and should be

2    permitted to do so?

3              MR. NASEEM:  I am, Your Honor.

4              THE COURT:  Ms. Sorsby, you've satisfactorily answered

5    all my questions up to this point.  But before I call upon you

6    to sign your plea petition here in open court and then stand to

7    enter your plea to the information, do you have any questions

8    that you'd like to ask either Mr. Naseem or myself?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  Okay.  Counsel, if you'd have your client

11   sign the plea petition and hand that up with the final version

12   of the plea agreement, I'd appreciate it.

13             The final version of the fully executed plea agreement

14   is approved for filing.  The corresponding plea petition has

15   been reviewed.  It likewise will be approved for filing, but

16   I'd ask the courtroom deputy, Ms. Holman, acknowledge

17   Ms. Sorsby's signature where indicated on page 5 of the

18   petition.

19             Ms. Sorsby, respectfully I would remind you one final

20   time that you have the right to persist in your prior pleas of

21   not guilty in the charges against you in the indictment.

22   Likewise, you have the right to enter a plea of not guilty, no

23   contest, or guilty to the charge set forth in the information

24   filed today.  With that understanding, please stand.

25             As relates to the charge of misprision of a felony set

1    forth in the information, ma'am, how do you now plead?

2            THE DEFENDANT:  Guilty.

3            THE COURT:  Thank you.  Be seated, please.

4            I find that Ms. Sorsby is fully competent and capable

5    of entering a plea of guilty and she understands the charge

6    against her as set forth in the information, that she

7    voluntarily wishes to plead guilty to that charge, that her

8    guilty plea is not the result of any force or threats against

9    her, nor the result of any promises made to her except those

10   specifically set forth in her plea agreement with the

11   government, and finally I find that there exists a factual

12   basis for the plea as relates to each essential element of the

13   offense charged.  Therefore, conditionally I do accept the

14   defendant's guilty plea.

15           Consistent with the 11(c)(1)(C) nature of the parties'

16   plea agreement, I make no findings today whether any or all the

17   terms of the plea agreement should be accepted or rejected.

18   Those decisions are deferred and will be made by the presiding

19   district judge, Carlos Murguia, after he has the benefit of a

20   presentence investigation report and any other information the

21   parties may submit.  The probation office is ordered to

22   commence the presentence investigation immediately.

23           Counsel, please contact Judge Murguia's chambers once

24   any objections have been lodged or the time for same has

25   expired and try to arrange a mutually convenient sentencing

 1    date.

 2            Mr. Oakley, does the government have any objection to

 3    Ms. Sorsby remaining on conditions of release pending

 4    sentencing?

 5            MR. OAKLEY:  No objection.

 6            THE COURT:  Is there anything further on behalf of the

 7    government today?

 8            MR. OAKLEY:  No, Your Honor.

 9            THE COURT:  The courtroom deputy's always right, the

10    judge is often wrong; Judge Murguia's changed his procedure.

11    Hopefully we'll have the presentence investigation in time for

12    this.  The sentencing hearing is set for January 14, 2019 at

13    9:30 a.m. in Judge Murguia's courtroom upstairs.

14            Mr. Oakley, anything else on behalf of the government?

15            MR. OAKLEY:  No, Your Honor.  Thank you.

16            THE COURT:  Mr. Naseem, anything further on behalf of

17    Ms. Sorsby?

18            MR. NASEEM:  No, Your Honor.  Thank you very much.

19            THE COURT:  We will be in recess until 3:20 and take

20    up a three o'clock case.  We have some other matters we need to

21    address in chambers.

22         (Proceedings adjourned.)

23

24

25

1                          CERTIFICATE

2          I certify that the foregoing is a true and correct

3    transcript from the stenographically reported proceedings in

4    the above-entitled matter.

5        DATE:  June 29, 2020

6

7                    /s/Kimberly R. Greiner
                     KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
8                    United States Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25