## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

        **Plaintiff,**

**v.**
                                   **Case No. 15-20052-02-JWL**
                                         **20-2350-JWL**

**Laura Lee Sorsby,**

        **Defendant.**

### MEMORANDUM AND ORDER

Defendant Laura Lee Sorsby was initially charged with wire fraud and conspiracy to commit wire fraud, charges that carried a maximum term of 20 years.  In October 2018, defendant entered into a plea agreement with the government pursuant to Federal Rule of criminal Procedure 11(c)(1)(C).  Consistent with that agreement, the government filed a one-count information charging defendant with Misprision of a Felony[1] in violation of 18 U.S.C. § 4, a charge that carries a maximum term of three years of imprisonment. Defendant entered a guilty plea to the Information and the parties agreed that, contingent on the district court's acceptance of the plea agreement, defendant would be sentenced to a 24-month term of imprisonment.  The plea agreement also contained an appeal waiver.  The district judge assigned to this case at the time accepted the parties' plea agreement and, in September 2019, sentenced defendant to a 24-month

---

[1] As summarized by the magistrate judge at the change of plea hearing, defendant was essentially charged with having knowledge of a commission of a felony, specifically wire fraud; concealing that felony; and failing to make it known in a timely manner to the proper authorities.

term of imprisonment followed by a one-year term of supervised release and restitution in the amount of $8,362,200. Defendant did not file an appeal and she is no longer incarcerated.

In July 2020, defendant filed a pro se motion to vacate, set aside or correct her sentence under 28 U.S.C. § 2255 (doc. 180). In a prior memorandum and order, the court determined that an evidentiary hearing was required on defendant's claim that her counsel failed to file an appeal despite her specific request that he do so. The court appointed counsel with respect to that claim, scheduled an evidentiary hearing, and retained the remaining claims under advisement pending resolution of the claim concerning defendant's appeal request. Thereafter, defendant's counsel notified the court that defendant desired to withdraw that claim and, accordingly, the court denied as moot defendant's claim that her counsel failed to file an appeal despite a request that he do so.

This matter is now before the court on the remaining claims set forth in defendant's § 2255 motion. As will be explained, the court denies each of defendant's remaining claims. Moreover, because the record conclusively establishes that defendant is not entitled to relief on these claims, an evidentiary hearing is not required. *See* 28 U.S.C. § 2255(b). Thus, defendant's request that the court appoint counsel to represent her in connection with any evidentiary hearing arising out of her remaining claims is moot.

*Background*

During the plea colloquy between defendant and the magistrate judge, defendant confirmed that the following facts, as set forth in the parties' plea agreement, fairly and completely described her conduct during the relevant time period:

Nagy Shehata is a resident of Kansas. He conducted business through Premier Investment Group, Inc., a Missouri Corporation. Shehata was the President and Kansas registered agent for the corporation. Defendant Laura Lee Sorsby is a resident of Texas. She conducted business through Can Am International. Shehata formed a joint venture partnership with Sorsby.

The victim was a resident of Turkey. Victim was the founder of a hospital in Istanbul, Turkey. Victim was approached by the defendants, or others acting on the defendants' behalf, about an investment opportunity. Victim was offered an investment into a project that consisted of building a hospital in Syria, which was later changed to a shopping mall in Iraq.

Shehata provided Victim with documents that falsely claimed ABN AMRO, a financial institution, was holding one billion Euros that would be used as collateral for the project. The documents were on ABN AMRO letterhead and bore signatures that purported to be from an ABN AMRO employee. However, the documents were fraudulent and ABN AMRO was not holding money for the project.

Victim agreed to provide money to invest in the project. On or about October 26, 2010, he transferred 4 million Euros (approximately $5,547,200.00 USD) to Defendant Shehata's company, Premier Investment Group. The funds were sent via wire transfer from Victim's bank account in Turkey to Defendant Shehata's bank account in New York. Defendant Shehata then wired the money from his account in New York to bank accounts in Kansas. On November 10, 2010, Victim wired 2 million Euros to Sorsby's attorney, who transferred some of the money to various accounts held in Sorsby's name or Can Am International, LLC.

The defendant learned that the ABN AMRO documents were fake after other persons questioned the legitimacy of the documents. The defendant, having knowledge that Victim had been defrauded through the wire fraud scheme, concealed and did not as soon as possible make known the crime to some judge or other person in civil or military authority under the United States.

Instead of using the money for the hospital or shopping mall projects, Shehata used it for personal items and sent part of the money to other conspirators. For instance, Shehata used the money to buy a new car for approximately $111,444 and spent approximately $855,388.27 of the investment on a house. Sorsby used some of the money received from the Victim to travel to meet with the Victim overseas and to buy the following property:

One 2011 Chevrolet Tahoe VIN: 1GNSCCEOXBR355208;
One 2014 BMW 650i, VIN: WBA6B2C53ED128785;
Real Property known as 3612 Wyatt Lane, Texarkana, TX;

3

Real Property known as 1 Windmere Drive, Texarkana, TX;
Real Property known as 10650 Brewer Road, Salado, TX

Defendant swore under oath to the magistrate judge that there was nothing materially inaccurate in the factual basis supporting her guilty plea and that there was no additional information that should have been made available to the magistrate judge with respect to the factual basis for defendant's guilty plea.

*Discussion*

In her motion, defendant contends that her plea counsel rendered constitutionally deficient representation in various respects relating to her guilty plea and that, because of that deficient representation, defendant was essentially denied the opportunity to prove her innocence. Specifically, defendant contends that her counsel "pressured" her to plead guilty; that she was under mental duress at the time she agreed to plea in light of her daughter's poor health such that her counsel should have given her more time to consider the plea; that her counsel should have hired an investigator to show that the victim had engaged in tax evasion and other conduct; that her counsel failed to call key witnesses to "testify" to the court; that her counsel withheld from the court exculpatory evidence that would have demonstrated that she and the victim worked together on various projects for many years and that defendant had performed a significant amount of legitimate work for the victim; that her counsel should have demanded an evidentiary hearing during which defendant could have proven her innocence; that her counsel failed to explain to her the "hidden meanings" of various provisions in the plea agreement; that her counsel would not let

her plead "no contest" to the Information despite her desire to do so; and that her counsel should have demanded a "formal accounting" to verify the restitution amount.

To establish ineffective assistance of counsel, defendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that she was "prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). With respect to the performance prong, defendant must overcome a "strong presumption that counsel's representation was within a wide range of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (internal quotations omitted). To overcome that presumption, she must show that counsel "failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal quotations omitted).  In other words, defendant must show that her counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Rushin*, 642 F.3d 1299, 1307 (10th Cir. 2011) (quoting Harrington, 131 S. Ct. at 787).

With respect to the prejudice prong, defendant must "demonstrate a 'reasonable probability' that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rushin*, 642 F.3d at 1309 (quoting *Harrington*, 131 S. Ct. at 787).  A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id*. at 1310 (quoting *Strickland*, 466 U.S. at 694).  Confidence in the outcome is undermined only when "the likelihood of a different result is substantial, not just conceivable." *Id*.  In the specific context of ineffective assistance in connection with a guilty plea, prejudice is demonstrated by showing that but for

5

counsel's alleged errors, defendant would not have pleaded guilty and would have instead proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Defendant's claims that she is innocent and that her guilty plea was coerced are flatly contradicted by the record in this case. Defendant expressly acknowledged in her plea petition that she had knowledge of the commission of wire fraud and concealed that knowledge. She acknowledged that she understood that she could plead not guilty and achieve most of what she now complains about—the right to compel witnesses to testify in her favor and the right to cross-examine witnesses against her. She expressly acknowledged in the plea petition that she did not believe that she was innocent and that she was in fact guilty; that her mind was "clear"; and that her guilty plea was entered freely and voluntarily and was not the result of any force or threats against her. In her Rule 11 plea colloquy with Magistrate Judge O'Hara, defendant confirmed her ability to think and concentrate clearly and confirmed her understanding that she could force the case to trial and force the government to prove her guilt. She confirmed her understanding of the specific restitution amount in this case and that she could call witnesses at trial. Despite her allegation that her counsel instructed her to reply "yes" to every question posed to her during the plea colloquy, defendant was clearly thinking for herself—she sought clarification from Judge O'Hara on several occasions; paused the proceedings several times to confer privately with her counsel; and even requested and obtained minor changes to the factual basis of the plea agreement during the plea colloquy. Moreover, defendant confirmed to Judge O'Hara on the record that no one had forced her to plead guilty and that she was, in fact, guilty. She confirmed that the narrative of the factual basis of the plea agreement (after making revisions she desired) was complete and accurate. She reiterated that the decision to plead guilty was her decision alone and that her

6

counsel never expressed or implied that she should plead guilty instead of going to trial. Based on defendant's sworn and thorough declarations in open court, the court finds that defendant's claim of innocence lacks merit and that she voluntarily entered a guilty plea. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Moreover, each of defendant's claims necessarily fails because she has not shown or even alleged prejudice. To show prejudice, she must demonstrate that she would have proceeded to trial in lieu of entering her guilty plea. She makes no such allegation and there is no evidence in the record that rejecting the government's plea offer would have been rational.[2] The government filed the superseding information based on the parties' agreement—without the agreement, defendant faced substantive wire fraud and wire fraud conspiracy charges that each carried a 20-year maximum sentence. The presentence report reflects that, but for the information filed in connection with the plea agreement, defendant likely faced a Guidelines range of 63 to 78 months if convicted of the charges contained in the indictment. Defendant, then, obtained a substantial benefit by virtue of the plea agreement. *See Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) ("proof of prejudice requires a petitioner to show that 'a decision to reject the plea bargain

---

[2] Defendant repeatedly asserts that she desired an "evidentiary hearing" for the testimony of her key witnesses and so that she could prove her innocence. But as clearly explained to her during the Rule 11 plea colloquy, defendant's options were entering a guilty plea or proceeding to trial. There is simply no procedural mechanism for the evidentiary hearing defendant describes. Trial would have provided an opportunity for the testimony of witnesses and for defendant to tell her story, but she knowingly and voluntarily gave up that option by entering a guilty plea.

would have been rational under the circumstances'"). In light of these circumstances, even if defendant made the conclusory allegation that she would have proceeded to trial, the court would reject that assertion. *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (court looks to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial). In short, because defendant has not alleged and cannot establish prejudice, she cannot prevail on her ineffective assistance claims.

2.  Jurisdiction

Defendant next contends that her Sixth Amendment right to counsel was violated because her lawyers failed to challenge the indictment for lack of jurisdiction. The record reveals, however, that defendant's counsel filed a motion to dismiss the indictment for lack of jurisdiction (asserting many of the arguments that defendant raises in her motion) in September 2016. The district judge assigned to the case at the time denied that motion without prejudice to reasserting the motion at trial after the development of facts pertinent to the issue. Of course, a trial on the wire fraud charges set forth in the indictment was avoided when defendant entered a guilty plea to the charge set forth in the superseding information. While defendant vaguely asserts that her counsel should have filed an amended motion to dismiss once additional evidence revealed the allegedly tenuous connection between defendant's conduct and the United States, the district court had already decided that factual disputes relating to jurisdiction would not be resolved until trial. A lawyer is not ineffective under *Strickland* for failing to advance a meritless argument. *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial). And of course, because the wire fraud offenses

8

charged in the indictment were not included in the superseding information, there is simply no prejudice in failing to more vigorously attack the wire fraud offenses for lack of jurisdiction.

More importantly, defendant does not suggest in her motion that the court lacked jurisdiction over the single offense to which she ultimately pled guilty—misprision of a felony—and she does not fault her counsel for failing to challenge the court's jurisdiction over that offense. Nor could she reasonably do so. She admitted during the plea colloquy that the facts set forth in the plea agreement were complete and accurate, including the allegations that she concealed the fraudulent scheme in the United States. *See United States v. Brown*, 164 F.3d 518, 521 (10th Cir. 1998) (by pleading guilty, defendant admitted all material facts contained in the indictment, including allegations that his criminal activity occurred in Utah). Defendant, then, has simply not shown that her lawyers acted unreasonably in connection with any jurisdictional issues presented in this case.[3]

3. Remaining Claims

Throughout her voluminous filings, defendant references additional conduct on the part of the government and her lawyers that she purports to challenge in her motion. She asserts a *Brady* claim against the government for alleging withholding exculpatory evidence that would have

---

[3] Defendant also contends that her counsel acted deficiently by filing a joint motion to dismiss for lack of jurisdiction with her co-defendant which, according to defendant, constituted a conflict of interest. This claim lacks merit for two reasons. First, defendant has not alleged any prejudice from the filing of the joint motion. Second, the counsel who filed the joint motion was permitted to withdraw and, as soon as new counsel was appointed for defendant, that counsel filed a motion to remove the "joint" designation from the motion to dismiss and to clarify to the court that no joint defense agreement existed and that any notion that defendant was acting "jointly" with her co-defendant was not accurate.

demonstrated that she and the victim worked together on various projects for many years and that defendant had performed a significant amount of legitimate work for the victim.  She asserts that the government engaged in "overreach" and prosecutorial misconduct because the victim never pressed charges against her and had to be "convinced" that he was a victim after the government sought him out.[4]  She claims a violation of her Fourth Amendment rights based on the FBI's raid of her Texas home.  Lastly, she asserts a violation of her due process rights based on the fact that no evidentiary hearing or "formal accounting" occurred to verify the restitution amount and the fact that her witnesses were not permitted to testify before the court.

Each of these claims is procedurally barred because defendant did not raise them on appeal. *See United States v. Creighton*, 786 Fed. Appx. 743, 751-52 (10th Cir. 2019) (prosecutorial misconduct claims presented in § 2255 motion were procedurally barred when they could have been raised in direct appeal but were not); *United States v. Jordan*, 461 Fed. Appx. 771, 777-78 (10th Cir. 2012) (*Brady* claims subject to procedural default); *see also United States v. Hall,* 746 Fed. Appx. 743 (10th Cir. 2018) (procedural bar applies even if no direct appeal is filed)*; United States v. Allen*, 16 F.3d 377, 378-79 (10th Cir. 1994) (if government does not raise procedural bar, district court can raise it on its own if doing so furthers the interests of judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice).

---

[4] In passing, defendant asserts that her counsel was ineffective for failing to file a motion to dismiss the indictment based on prosecutorial misconduct or overreach based on her assertion that the victim never wanted to press charges against her.  Whether a victim wants to "press charges" is not relevant because the decision to prosecute rests with the government, not the victim.  Counsel was not ineffective for failing to raise an argument that clearly lacks merit. *See United States v. Fortune*, 41 Fed. Appx. 318, 319 (10th Cir. 2002) (counsel's failure to raise an issue cannot be deemed deficient where the issue lacks merit).

Defendant has failed to demonstrate why the procedural bar should not apply—either because there was good cause for failing to raise these issues, and that the failure to consider these issues will result in actual prejudice, or because the bar will work a fundamental miscarriage of justice. *See United States v. Cervini*, 379 F.3d 987, 991 (10th Cir. 2004).

**Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . .  only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to the claims denied above, for the same reasons stated, defendant has not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

**IT IS FURTHER ORDERED BY THE COURT THAT** those portions of defendant's motion to vacate under 28 U.S.C. § 2255 (doc. 180) that were previously retained under advisement are **denied**.

**IT IS SO ORDERED.**

Dated this 14th day of December, 2020, at Kansas City, Kansas.


*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge